IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 05-cv-02293-REB-MEH

BRAND MANAGEMENT, INC., a Colorado corporation
and SUSHI REDI, INC., a Colorado corporation

      Plaintiffs,

v.

MARYLAND CASUALTY COMPANY, a Maryland corporation
and ZURICH NORTH AMERICA SERVICES, an Illinois corporation

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is **Maryland Casualty Company's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56** [#58], filed October 23, 2006. I grant the motion.

### I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c); **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. **Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); **Farthing v. City of Shawnee**, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); **Farthing**, 39 F.3d at 1134.

A party which does not have the burden of proof at trial must show the absence of a genuine fact issue. **Concrete Works, Inc. v. City & County of Denver**, 36 F.3d 1513, 1517 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Id.* at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. **Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services**, 165 F.3d 1321, 1326 (10th Cir.), **cert. denied**, 120 S.Ct. 53 (1999).

### III. ANALYSIS

Plaintiffs operate a sushi-making business, which was formerly located at 5410 Race Street, Denver, Colorado. That facility was shut down on January 3, 2003, after listeria contamination was discovered at the plant. After the facility was cleaned and sanitized, it reopened on January 18, 2003. It is undisputed that as of January 18, the facility was free of listeria and was able to operate as it had prior to the contamination.

Plaintiffs held a policy of insurance on the premises issued by defendant Maryland Casualty Company that provided coverage, *inter alia*, for

> the actual loss of "business income" you sustain due to the
> necessary suspension of "operations" during the "period of
> restoration," but not to exceed 12 consecutive months. The

> suspension must be caused by direct physical loss of or
> damage to property at the "described premises[.]"

(Def. Motion App., Exh. A-5 at 13, ¶ III.A.)  Maryland Casualty paid plaintiffs $130,911.21 under the policy, subject to a reservation of rights, for its losses during the "necessary suspension of 'operations' during the 'period of restoration'" from January 3 through January 18.[1]  Plaintiffs, however, claim that they are entitled to additional compensation under the policy because their largest customer, King Soopers, refused to purchase further product from them even after they resumed operations so long as they operated out of the Race Court facility.  They have asserted causes of action for breach of contract and bad faith breach of insurance contract and seek damages for losses up through June 7, 2003, the date that they relocated to a new facility.[2]

Under Colorado law, which applies in this diversity case, *see* **Wood v. Eli Lilly & Co.**, 38 F.3d 510, 512 (10th Cir. 1994), an insurance policy is a contract and is interpreted accordingly, **Union Insurance Co. v. Houtz**, 883 P.2d 1057, 1061 (Colo.

---

[1]  As defined by the policy, "period of restoration" means the period of time that

> 1. Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the "described premises"; and
>
> 2. Ends on the earlier of:
>
>> a. The date when the property at the "described premises" should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>>
>> b. The date when business is resumed at a new permanent location.

(Def. Motion App., Exh. A-5 at 26, ¶ K.)

[2]  Defendants have counterclaimed for repayment of the $130,911.21 on the grounds that plaintiffs failed to disclose ongoing listeria contamination at the Race Court facility prior to the date the insurance policy was issued.

3

1994); ***Chacon v. American Family Mutual Insurance Co.***, 788 P.2d 748, 750 (Colo. 1990). The primary goal in interpreting the policy is to effectuate the intent of the parties. ***Houtz***, 883 P.2d at 1061; ***Simon v. Shelter General Insurance Co.***, 842 P.2d 236, 239 (Colo. 1992). To accomplish this objective, the terms of the policy are given their plain and ordinary meanings unless the policy itself indicates that the parties intended otherwise. ***Bohrer v. Church Mutual Insurance Co.***, 965 P.2d 1258, 1261-62 (Colo. 1998); ***Chacon***, 788 P.2d at 750. Policy provisions that are clear and unambiguous should be enforced as written. ***Chacon***, 788 P.2d at 750; ***Kane v. Royal Insurance Co. of America***, 768 P.2d 678, 680 (Colo. 1989).

As an initial matter, the parties agree that plaintiff Brand Management, Inc., and defendant Zurich North America Services both should be dismissed as parties to this litigation. Therefore, the motion for summary judgment as to the claims by and against those parties will be granted.

The gravamen of the dispute between Sushi Redi and Maryland Casualty is whether the loss of King Soopers' business after January 18, 2003, comes within the "lost business income and extra expense" provisions of the policy. As noted above, the policy provides coverage for:

> the actual loss of "business income" you sustain due to the necessary suspension of "operations" during the "period of restoration," but not to exceed 12 consecutive months. The suspension must be caused by direct physical loss of or damage to property at the "described premises[.]"

(Def. Motion App., Exh. A-5 at 13, ¶ III.A.) Sushi Redi, relying on the Fourth Circuit's decision in ***High Country Arts and Crafts Guild v. Hartford Fire Insurance Co.***, 126

F.3d 629, 632 (4th Cir. 1997), urges that this language requires only that the lost income be traceable to the suspension of operations. However, this interpretation of the policy language is not reasonable because it essentially reads the phrases "necessary suspension of operations" and "period of restoration" as synonymous when they are not. Indeed, the period of restoration might extend well beyond the necessary suspension of operations. Rather, the policy unambiguously requires both that the claimed business income loss be causally linked to the "necessary suspension of operations" and also that it be sustained during the "period of restoration." *See, e.g.*, *Pennbarr Corp. v. Insurance Co. Of North America*, 976 F.2d 145, 153 (3rd Cir. 1992); *Rogers v. American Insurance Co.*, 338 F.2d 240, 243 (8th Cir. 1964); *Midland Broadcasters, Inc. v. Insurance Co. of North America*, 636 F.Supp. 165, 167 (D. Kan. 1986). Only when both preconditions are satisfied is coverage provided.

The phrase "necessary suspension of operations," although not defined in the policy, is generally understood to connote a total cessation of business activity. *American States Insurance Co. v. Creative Walking, Inc.*, 16 F.Supp.2d 1062,1065 (E.D. Mo. 1998); *Home Indemnity Co. v. Hyplains Beef, L.C.*, 893 F.Supp. 987, 991 (D. Kan. 1995), *aff'd*, 89 F.3d 850 (10th Cir. 1996). Thus, once the insured is able to resume operations, the business interruption clause does not provide coverage for the subsequent market consequences of the temporary cessation of business. *See, e.g.*, *Ramada Inn Ramogreen, Inc. v. Travelers Indemnity Co. of America*, 835 F.2d 812, 814-15 (11th Cir. 1988); *American States Insurance*, 16 F.Supp.2d at 1065; *Royal Indemnity Insurance Co. v. Mikob Properties, Inc.*, 940 F.Supp. 155, 160 (S.D. Tex. 1996). There is no dispute here that Sushi Redi was able to resume full operations at

its Race Court facility on January 18, 2003. The business interruption clause provided no coverage for business losses after that date.

Nevertheless, assuming *arguendo* that Sushi Redi's interpretation of the policy is correct, there is no admissible evidence that King Soopers did, in fact, refuse to purchase product from Sushi Redi while it continued to operate out of the Race Court facility. In support of this pivotal fact, Sushi Redi proffers nothing more than hearsay testimony from one of its own employees. (Plf. Resp. App., Exh. 4 at 160.) This evidence is plainly insufficient to meet Sushi Redi's burden on summary judgment. **Thomas v. International Business Machines**, 48 F.3d 478, 485 (10th Cir.1995); **Kephart v. Data Systems International, Inc.**, 243 F. Supp. 2d 1205, 1209 (D. Kan. 2003).

Alternatively, Sushi Redi contends that it is at least entitled to the additional coverage provided by the policy's "Extended Period of Indemnity" clause. I disagree. This coverage is not triggered unless, following restoration of the covered premises, there is a continued "impairment of 'operations.'" (Def. Motion App., Exh. A-5 at 13-14.) "Operations," as defined by the policy, means "business activities occurring at the 'described premises.'" (*Id*. at 26.) There is no dispute here that Sushi Redi resumed full operation of its business on January 18, 2003. Thus, there was no impairment of operations to trigger the extended coverage clause.

For these reasons Maryland Casualty is entitled to summary judgment as to Sushi Redi's claim for breach of insurance contract. Moreover, in the absence of a genuine issue of material fact as to the breach of contract claim, Sushi Redi's bad faith claim cannot survive summary judgment either. **See South Park Aggregates, Inc. v.**

*Northwestern National Insurance Co. of Milwaukee, Wisconsin*, 847 P.2d 218, 223 (Colo. App. 1992)

**THEREFORE, IT IS ORDERED** as follows:

1. That **Maryland Casualty Company's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56** [#58], filed October 23, 2006, is **GRANTED**;

2. That plaintiff Brand Management, Inc., is **DROPPED** as a named party to this action, and the case caption is **AMENDED** accordingly;

3. That the claims of plaintiff Sushi Redi, Inc., against defendant Zurich North America Services are **DISMISSED WITH PREJUDICE**;

4. That defendant Zurich North America Services is **DROPPED** as a named party to this action, and the case caption is **AMENDED** accordingly;

5. That the claims of plaintiff Sushi Redi, Inc., for breach of contract and bad faith breach of insurance contract against Maryland Casualty Company are **DISMISSED WITH PREJUDICE**;

6. That defendant Maryland Casualty Company is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

7. That defendant Maryland Casualty Company **SHALL FILE** a status report on or before **July 13, 2007**, informing the court as to whether it intends to pursue its counterclaims against plaintiff Sushi Redi.

8

Dated June 18, 2007, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**